**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-01106-CMA-MEH

THOMAS STICH,
ICON HOME HEALTH, LLC, a Colorado limited liability company,

     Plaintiffs,

v.

BAC HOME LOANS SERVICING, LP,

     Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

---

This matter is before the Court on Defendant BAC Home Loans Servicing, LP's

("BAC Home Loans") Motion to Dismiss.  (Doc. # 15.)  For the reasons discussed

below, the Motion is granted in part and denied in part.

## I.  BACKGROUND

This matter arises out of a dispute concerning information Defendant BAC Home

Loans provided to credit reporting agencies ("CRAs") regarding the timeliness of Plaintiff

Thomas Stich's payments on a 30-year mortgage loan he obtained from third party CTX

Mortgage Company, LLC in November 2003, for an investment property located in

Golden, Colorado.  The interest rate on the loan was fixed for the first five years, after

which it converted to an option adjustable rate loan.  At some point, CTX Mortgage

Company sold the loan to Countrywide Home Loans, Inc. ("Countrywide"), which sold the loan to Defendant BAC Home Loans.

As allowable under the terms of the loan agreement, Mr. Stich chose to pay only interest on the loan.  Mr. Stich asserts that he has never defaulted on the loan and that he timely submitted all payments.[1]

On or about December 2008, at the end of the five-year fixed rate period, a Countrywide/BAC Home Loan representative contacted Mr. Stich to discuss modification of the loan.  In January 2009, Mr. Stich was advised that he may qualify for a modification to convert his adjustable interest rate loan into a fixed interest rate loan; however, Mr. Stich decided not to pursue a loan modification.  Nevertheless, in August 2009, Defendant notified Mr. Stich that his loan modification had been approved and that he must sign and return the enclosed loan documents.  Mr. Stich declined to submit the loan modification documents because he decided that the terms of the loan modifications were not in his best interest.  However, Mr. Stich confirmed with a BAC Home Loan representative that, if he did not submit the loan modification documents, his loan would not be modified and that the terms of his original loan agreement would remain in effect.

Plaintiffs allege that, in September 2009, unbeknownst to Mr. Stich, Defendant began a practice of not applying Mr. Stich's loan payments to his account.

---

[1]   Pursuant to the loan's terms, payments are due on the first of each month, but payments made within the fifteen-day grace period are considered timely.  (*Id.*, ¶ 34.)

Subsequently, Defendant reported to the CRAs that Mr. Stich was delinquent on his loan from September through December 2009.  Mr. Stich asserts that these reports were false because he timely submitted checks or authorized electronic transfers to BAC Home Loans as payment.

The Complaint lacks any information concerning when Mr. Stich discovered the false reports or exactly when or who notified Defendant that Mr. Stich disputed Defendant's reports concerning his September, October, November, and December 2009 loan payments.  However, on January 26, 2010, about four months before Plaintiffs commenced this action, Bank of America's Home Loans division sent Mr. Stich a letter, in response to "[Mr. Stich's] recent contact regarding [Mr. Stich's] request for a Credit Reporting adjustment," stating that, on that same day, it submitted corrected information to the CRAs concerning the timeliness of Mr. Stich's September, October, November, and December 2009 payments.  (Doc. # 1-13 at 2.)  The letter also advised Mr. Stich that it would take an average of 60 days for the CRAs to complete the submitted credit report adjustment.  (*Id.*)  In other words, the credit report adjustment would be completed by approximately the end of March.

On February 16, 2010, Defendant applied Mr. Stich's January 2010 payment, which he made on January 16, to his account.  Nevertheless, Defendant reported Mr. Stich's January 2010 payment as 30-days late to the CRAs.  Defendant also reported Plaintiff's March 2010 payment as 30-days late; however, Mr. Stich alleges that he timely submitted his March payment.

Finally, on March 12, 2010, Mr. Stich sent letters to Equifax, Experian, TransUnion, and Innovis, advising them of the falsity of Defendant's reports. (Doc. # 1-17 at 3). The letter also attached Bank of America's January 26, 2010 corre- spondence to Mr. Stich concerning its submissions of corrected information to the CRAs concerning the September, October, November, and December 2009 payments. Despite the 60-day time line for any corrections to appear in Mr. Stich's credit report, Mr. Stich complained to the CRAs that, as of March 11, 2010, such changes did not appear on his credit report and demanded that the CRAs conduct an immediate investigation of the reported delinquencies. (*Id.*)

On March 24, 2010, Plaintiffs' attorney received correspondence from Innovis Consumer Disputes stating that BAC Home Loans had verified the accuracy of the negative information on Mr. Stich's credit report, *i.e.*, that Mr. Stich's January and March 2010 payments were past due.[2] (Doc. # 1-16 at 5.) At this point, the negative information concerning the September-December 2009 payments had been removed from Mr. Stich's credit report. (*See id.*)

On May 12, 2010, Mr. Stich and co-Plaintiff Icon Home Health, LLC, of which Mr. Stich is a 50% member and for which he serves as Chief Financial Officer, filed a complaint in this District "to vindicate damages to their credit caused by the Defendant's false reports to consumer credit reporting agencies of late payments on a loan serviced

---

[2] The report also lists Mr. Stich's March 2007 payment as past due, but this payment is not the subject of the instant dispute.

4

by Defendant that Mr. Stich owes for the purchase of investment property." (Doc. # 1, ¶ 10.) Plaintiffs assert that, as a result of Defendant's false reporting and as of February 2, 2010, Mr. Stich's credit score fell between 71 and 143 points, from a score of 700.[3] (*Id.*, ¶ 11.) Plaintiffs also contend that, in December 2009, Defendant's false reporting caused Champion Bank to refuse renewal of Icon's line of credit and caused other lenders to reduce Mr. Stich's line of credit, including, Bank of America, which reduced Mr. Stich's line of credit from $7,500.00 to $900, and Wells Fargo Bank, N.A., which reduced Mr. Stich's line of credit from $13,000.00 to $6,700.00. (*Id.*, ¶¶ 69, 70.)

Plaintiffs acknowledge that Defendant corrected some of the false information they provided to the CRAs, but contend that such corrections could not undo the damage their credit ratings had already suffered, as exemplified by other lenders reducing or denying lines of credit. (*Id.*, ¶ 12.) Plaintiffs further allege that, despite making corrections to Mr. Stich's credit report, Defendant continued to make false reports and verify false information concerning the timeliness of Mr. Stich's payments, which further damaged Plaintiffs. (*Id.*, ¶ 13.) Finally, Plaintiffs allege that, "upon information and belief," Defendant will continue its failures to apply Mr. Stich's loan payments to his account and will continue to report his payments as late to the CRAs.

------

[3] Plaintiffs represent that a credit score of at least 720 indicates an excellent credit history and enables borrowers to obtain favorable interest rates on loans; a score between 675-710 indicates a good credit history; a score between 620-674 indicates a below average credit history and borrowers will typically pay higher interest rates on lines of credit; and a score below 620 is considered "sub-prime" and borrowers will either be denied credit or pay higher interest rates. (*Id.*, ¶¶ 21-24.)

In their Complaint, Plaintiffs assert the following five claims against Defendant:

(1) willful violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(b);

(2) negligent violation of the FCRA, 15 U.S.C. § 1681s(b); (3) outrageous conduct;

(4) disparagement; and (5) preliminary injunctive relief.

In response to the Complaint, Defendant filed the instant Motion to Dismiss on

July 26, 2010.  (Doc. # 15.)  Plaintiffs responded on August 19, 2010 (Doc. # 16), and

Defendant replied on September 3, 2010 (Doc. # 19.)[4]

## II.  <u>STANDARD OF REVIEW</u>

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court

"accept[s] all the well-pleaded allegations of the complaint as true" and "construe[s]

them in the light most favorable to the plaintiff."  *David v. City & County of Denver*, 101

F.3d 1344, 1352 (10th Cir. 1996).  The Court must decide "whether the complaint

contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at*

*Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).  "The plausibility standard is not akin to

a probability requirement, but it asks for more than a sheer possibility that" the alleged

claim might have occurred.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation and

quotation marks omitted).  "[T]he complaint must give the court reason to believe that

---

[4]  The Court admonishes Defendant for its crafty attempt to circumvent the under-signed's page limitations by submitting a single-spaced reply brief.  In the future, counsel shall ensure that all its documents comport with the undersigned's practice standards and the Court's Local Rules.  When an extension of the page limitations is necessary, counsel shall file a motion.  CMA Civ. Practice Standards II.A.1.

*this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."

*Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.

In evaluating the plausibility of a given claim, the Court "need not accept

conclusory allegations" without supporting factual averments. *S. Disposal, Inc., v. Tex.*

*Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only

the complaint itself, but also documents incorporated into the complaint by reference.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *TMJ Implants,*

*Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007). Courts may also consider

documents attached as exhibits to the complaint. *Gee v. Pacheco*, 627 F.3d 1178,

1186 (10th Cir. 2010).

### III.  ANALYSIS

### A.    WHETHER ICON HOME HEALTH HAS STANDING

Defendant seeks dismissal of Plaintiff Icon Home Health from this action on

grounds that Icon lacks standing to assert any FCRA claims arising from Defendant's

reports concerning Mr. Stich's payment history on his residential mortgage loan. (Doc.

# 15 at 6.)

Plaintiffs assert that Icon has standing because it asserted that its ability to obtain financing, including its long-held line of credit with Champion Bank, was affected by Defendant's negative credit reports.  (Doc. # 16 at 6.)  Plaintiffs further contend that, "if Icon were denied the opportunity to pursue its claim, it would have no redress for the injuries it suffered as a result of the Defendant's false reports." (*Id.* at 7.)  Finally, in an attempt to keep Icon in this action, Plaintiffs ask the court to "allow inside reverse piercing of the corporate veil and recognize that Icon is Mr. Stich's alter ego." (*Id.* at 8.)  Plaintiffs cite to *In re Phillips*, 139 P.3d 639 (Colo. 2006), in support of this request. (*Id.* at 7.)  In so doing, Plaintiffs ask the Court to expand the application of the inside reverse piercing doctrine, which the Court will not do.[5]

As Plaintiffs duly acknowledge, standing requires (1) an injury in fact that is (2) fairly traceable to the challenged action and (3) likely to be redressed by judicial intervention.  *Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1264-65 (10th Cir. 2002).  Additionally, the injury-in-fact must derive from a violation of a legally protected interest.  *See Durdin v. Cheyenne Mountain Bank*, 98 P.3d 899, 902 (Colo. Ct. App. 2004).  "A legally protected interest is any right arising from a constitution, statute, common law, contract, rule, or regulation."  *Reyher v. State Farm Mut. Auto. Ins. Co.*,

---

[5]   As stated in *Phillips*, "Reverse piercing occurs when a claimant seeks to hold a corporation liable for the obligations of an individual shareholder . . . .  Inside [reverse piercing] claims involve a controlling insider who attempts to have the corporate entity disregarded to avail the insider of corporate claims against third parties or to protect corporate assets from third party claims that are available only for assets owned by the insider."  139 P.3d at 644-45 (citations and quotations omitted).

230 P.3d 1244, 1251 (Colo. Ct. App. 2009).  An injury in fact may be intangible, like a deprivation of a legally created right.  *Id.*

Congress passed the FCRA to protect consumers, namely individuals, when CRAs collect credit information and generate "consumer reports."[6]  *See* 15 U.S.C. § 1681 ("Congressional findings and statement of purpose"); § 1681a(c) ("The term 'consumer' means an individual.").

Where an individual's credit information is used to obtain credit for business purposes, as opposed to personal purposes, courts have determined that the credit report does not fall within the realm of the FCRA, which was implemented to protect consumers.  *See, e.g., Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314, 1328 (D. Kan. 2009) (holding that the FCRA only protects individual consumers and, therefore, losses to businesses are not recoverable under the FCRA); *Lucchesi v. Experian Info. Solutions, Inc.*, 226 F.R.D. 172, 174 (S.D.N.Y. 2005) (consumer report generated for purposes of obtaining financing for the individual's business was not a "consumer report" under the FCRA); *Natale v. TRW, Inc.*, No. C 97-3661, 1999 WL 179678, at *3 (N.D. Cal. Mar. 30, 1999) (unpublished) (holding that the plaintiff may not assert an FCRA claim to "recover damages related primarily to his business"); *Ley v. Boron Oil Co.*, 419 F. Supp. 1240, 1243 (W.D. Pa. 1976) (holding that the FCRA was

---

[6] "The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for credit.  15 U.S.C. § 1681a(d)(1).

not meant to cover business credit reports pertaining to business activities of the person who is the subject of the credit report).

In the instant case, Icon's claims arise from damages it purportedly incurred as a result of negative information on Mr. Stich's credit report, which information Defendant had furnished.  The asserted damages consisted of a bank's refusal to renew Icon's line of credit.  Because Icon's claims result from the losses to its business, such claims are not actionable under the FCRA.  Icon has no standing to assert a claim under the FCRA and, therefore, is not a proper party in this action.[7]  Accordingly, the Court finds that dismissal of Icon from the action is warranted.

## B.   WILLFUL AND NEGLIGENT VIOLATION OF THE FCRA, 15 U.S.C. § 1681s(b) (CLAIMS 1 AND 2)

Mr. Stich contends that Defendant willfully, maliciously, and negligently violated the FCRA, 15 U.S.C. § 1681s(b)[8] by providing false credit information about him to

---

[7]  Although Plaintiffs appear to assert jointly outrageous conduct and disparagement claims against Defendant, only Mr. Stich asserts damages in connection with those claims.

[8]  Mr. Stich states that the FCRA claims arise under 15 U.S.C. § 1681s(b), particularly, 15 U.S.C. § 1681s(b)(1)(A)-(E).  However, 15 U.S.C. § 1681s(b)(1)(A)-(C) concerns enforcement by other agencies and § 1681s(b)(1) does not contain subsections (D) and (E).

Upon review of the applicable statute and Mr. Stich's claims, the Court believes that Mr. Stich intended to bring the FCRA claims under 15 U.S.C. § 1681s-2(b) for violations of § 1681s-2(a). *See Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (unpublished) (noting that no private cause of action exists for breaches of duties by furnishers of information under § 1681s-2(a)); *Wenner v. Bank of Am., NA*, 637 F. Supp. 2d 944, 951-52 (D. Kan. 2009) (noting that although § 1681s-2(a) requires furnishers to provide accurate information to CRAs, Congress did not create a private right of action for violation of this provision; rather, private rights of action are allowable under § 1681s-2(b) for claims against furnishers of information, who have received notice from a CRA regarding a dispute and continue to report an account as delinquent without conducting a reasonable investigation). Accordingly, the Court will construe the FCRA claims and analyze the instant Motion under § 1681s-2(b).

several consumer reporting agencies and failing to correct such false reports upon receipt of notice from him, via the CRAs.  Mr. Stich also asserts that Defendant **knew** that he timely submitted payments on his loans, yet "willfully and maliciously" and "negligently" verified the false information it provided to the CRAs, and that Defendant's willfulness and maliciousness caused "substantial harm, including but not limited to: denial of credit, reduction of credit limits, embarrassment, humiliation, emotional distress, anxiety, frustration, damage to reputation and financial damage."  (Doc. # 1, ¶¶ 79, 80, 88, and 89).

Defendant seeks dismissal of these claims because it contends that it complied with its obligations under the FCRA, by taking reasonable measures to correct Mr. Stich's purportedly inaccurate information.  (Doc. #15 at 8).  Defendant does not dispute Mr. Stich's contentions concerning the inaccuracy of the information Defendant furnished to CRAs, but asserts that Mr. Stich's claims fail because Defendant has taken steps to correct and complete the provided information.  (*Id.*)  In sum, Defendant asserts that its corrective measures reveal that it did not act negligently or maliciously and willfully when reporting information to the CRAs concerning Mr. Stich's loan payments.

In response, Mr. Stich asserts that Defendant's Motion to Dismiss should be denied because Defendant "injects disputed issues of fact outside of the allegations in the Complaint," and, therefore, tries to convert the motion to dismiss into a motion for summary judgment.  (Doc. #16 at 3).

"The FCRA obligates furnishers of information [   ] to provide accurate information to consumer reporting agencies, and, **upon receiving notice of a dispute from a CRA**, to (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable." *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750-51 (10th Cir. 2009) (unpublished) (internal citations omitted and emphasis added) (affirming district court's dismissal of FCRA claim for failure to allege a CRA notified the furnisher of information that its information was in dispute); *see also Wenner v. Bank of Am., NA*, 637 F. Supp. 2d 944, 951 (D. Kan. 2009) ("After a furnisher of information receives notice of a consumer dispute **from a credit reporting agency**, the furnisher must investigate the consumer dispute, report the results of the investigation to the consumer reporting agency, and modify or delete information that is inaccurate or incomplete or cannot be verified.") (emphasis added) (citing 15 U.S.C. § 1681s-2(b); *Millett v. Ford Motor Credit Co.*, No. 04-2450, 2006 WL 1301160, at *2-3 (D. Kan. May 9, 2006) (unpublished)).  The duty to investigate is not triggered when the notice is received from the customer.  637 F. Supp. 2d at 952 (finding that the plaintiffs' "FCRA claims are facially viable to the extent that they allege that [the] defendants 'failed to reasonably investigate the validity and accuracy of the debt when notified by the CRAs'

of [the] plaintiffs' dispute").  "A furnisher of information who violates the FCRA is liable to

the consumer for actual damages and attorney's fees and, upon proof of a willful

violation, statutory and punitive damages."  *Id.* at 951 (citing 15 U.S.C. §§ 1681n (willful

noncompliance), 1681o (negligent noncompliance)).

      1.    <u>Defendant's Reports Concerning Mr. Stich's September-December 2009</u>
<u>Payments</u>

In the instant case, the Court finds that Mr. Stich's FCRA claims fail to the extent

they are premised on Defendant's reports that Mr. Stich's September, October,

November, and December 2009 payments were late.  As noted above, Exhibit 13

attached to the Complaint indicates that Mr. Stich directly contacted Defendant, the

furnisher of information, concerning the accuracy of its reports (and that Defendant took

corrective action upon receipt of Mr. Stich's notice).  Thus, **Mr. Stich's** notice to

Defendant failed to trigger Defendant's duty to conduct a reasonable investigation under

the FCRA.  *See Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x at 750-51 (10th

Cir. 2009) (unpublished) (upholding lower court's dismissal of FCRA claim where the

plaintiffs alleged that they, not any CRA, notified the furnisher of the dispute); *cf.*

*Wenner v. Bank of Am., NA*, 637 F. Supp. 2d 944, 952 (D. Kan. 2009) (finding that the

plaintiffs stated viable FCRA claims to the extent they alleged that the defendants failed

to conduct a reasonable investigation upon receipt of notice of the dispute from a CRA).

Additionally, to the extent that Mr. Stich's March 12, 2010 letter to the CRAs referenced

Defendant's reports concerning the untimeliness of Mr. Stich's September-December

2010 payments, those reports had already been corrected by Defendant and such

corrections appeared in Mr. Stich's credit report by the time Innovis Consumer Disputes completed its investigation.  (*See* Doc. # 1-16 at 5.)

The Court is fully aware that Mr. Stich has alleged various damages that he incurred as a result of Defendant's false reports concerning his September-December 2009 payments.  These allegations are more akin to a violation of Defendant's duty under § 1681s-2(a) to provide accurate information to the CRAs.  However, as previously noted, no private right of action exists for violations of § 1681s-2(a). *See Wenner*, 637 F. Supp. 2d at 952 (D. Kan. 2009).

Accordingly, the Court finds that the first and second claims for relief for FCRA violations under 15 U.S.C. § 1681s-2(b) fail to the extent they arise from Defendant's reports concerning Mr. Stich's September-October 2009 payments.

2.      <u>Defendant's Confirmation of Its Reports Concerning the Untimely Nature of Mr. Stich's January and March 2010 Payments</u>

To the extent that Mr. Stich's FCRA claims are premised on Defendant's confirmation of its reports concerning the untimely nature of Mr. Stich's January and March 2010 payments, the Court finds that Mr. Stich has stated viable claims for willful and negligent FCRA violations.  As alleged, Mr. Stich notified the CRAs that, contrary to Defendant's reports, he believed that his January and March 2010 payments were timely.  An investigation was conducted and Defendant "verified" that the information in its files concerning the untimeliness of his January and March 2010 payments was correct.  However, in its Motion to Dismiss, Defendant now intimates that its prior reports concerning the untimeliness of Mr. Stich's March 2010 payment was incorrect.

14

(*See* Doc. # 15 at 8) ("BAC's internal records demonstrate the alleged adverse information regarding [Mr. Stich's] March 2010 Loan payment was also removed from his credit report.").  Additionally, Defendant represents that it "is currently investigating the January 2010 payment to determine whether it was timely made, or whether [Defendant's] reporting on that payment should also be corrected."  (*Id.*)  Therefore, Defendant's own assertions in support of its Motion to Dismiss bolsters Mr. Stich's allegations that Defendant was, at the very least, negligent in verifying his payment history and that, at the time the CRAs notified it of Mr. Stich's dispute, it was in possession of information concerning the timeliness of Mr. Stich's payments.[9]

Accordingly, the Court finds that Defendant's Motion to Dismiss should be denied to the extent it seeks dismissal of the FCRA claims that relate to Defendant's verification of the untimeliness of Mr. Stich's January and May 2010 payments.  However, to the extent that Mr. Stich asserts business-related losses as a result of Defendant's reporting activities, those claims are not actionable under the FCRA, as discussed in section III(A), above.  Accordingly, Mr. Stich's FCRA claims are dismissed, in part, to the extent that they are premised on business-related damages arising from Defendant's reporting activities.

---

[9]  That Defendant has corrected its reports concerning the timeliness of Mr. Stich's September-December 2009 payments also suggests that Defendant lacks reasonable procedures for confirming consumer payment history before reporting such information to CRAs.

C.      OUTRAGEOUS CONDUCT CLAIM (CLAIM 3)

        In support of the outrageous conduct claim, Mr. Stich asserts that Defendant,

"knew that Mr. Stich's payments were timely made"; "engaged in extreme and

outrageous conduct by repeatedly, knowingly and maliciously providing false credit

information to several credit reporting agencies after Mr. Stich notified the Defendant

and the consumer credit reporting agencies of the false information reported";

Defendant's "conduct was reckless and done with the intent to cause [Mr. Stich] severe

emotional distress"; and Mr. Stich suffered emotional distress and financial damages, as

a result.  (Doc. # 1, ¶¶ 78, 87, 92-94.)

        Defendant seeks dismissal of this claim on grounds that its "conduct does not

rise to a level that is actionable under this tort."  (Doc. # 15 at 10.)

        In order to state a claim for outrageous conduct[10] under Colorado law, a plaintiff

must allege: (1) that the defendant engaged in extreme and outrageous conduct;

(2) that the defendant did so recklessly or with intent of causing the plaintiff severe

emotional distress; and (3) the conduct did indeed cause the plaintiff to suffer emotional

distress.  *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1068-69

(D. Colo. 2009) (citing *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. Ct. App.

2006)).  Conduct is outrageous in character where it is "so extreme in degree as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

---

        [10]   Outrageous conduct claims are also known as claims for intentional infliction of
emotional distress.  *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1068
(D. Colo. 2009).

intolerable in a civilized community." *McCrary v. Aurora Pub. Schs.*, 57 F. App'x 362, 374 (10th Cir. 2003) (unpublished) (quoting *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999)). Additionally, "conduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which [the actor] has actual or apparent authority over the other, or the power to affect the other's interests." *Pearson v. Kancilia*, 70 P.3d 594, 598 (Colo. Ct. App. 2003) (citation omitted). In other words, "the severity of the conduct that plaintiff need allege decreases as the defendant's level of control increases." *Spahn v. Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1076 (N.D. Ill. 2002) (cited in *Pearson*, 70 P.3d at 598).

Viewing the allegations in the light most favorable to Mr. Stich, the Court finds that he has adequately alleged an outrageous conduct claim. Much like the plaintiff in *Llewellyn v. Shearson Fin. Network, Inc.*, Mr. Stich asserts that Defendant knowingly reported false information concerning the timeliness of loan payments and, despite receiving notice from the CRAs of Mr. Stich's dispute, failed to correct the errors. *See Llewellyn*, 622 F. Supp. 2d at 1070-71; *see also Cross v. Receivables Mgmt. Solutions, Inc.*, No. 04-cv-01493, 2006 WL 446083, at *6 (D. Colo. Feb. 21, 2006) (unpublished) (finding outrageous conduct claim withstood a motion to dismiss in light of allegations that, despite notice of the plaintiff's dispute, the defendants continued to report an invalid debt to the CRAs). As a furnisher of information to CRAs, Defendant has control over the information contained within Mr. Stich's credit reports and, thus, has influence over Mr. Stich's credit score and his ability to maintain existing, and obtain additional,

lines of credit, which lines of credit are crucial for engaging in business transactions and investments.  Thus, allegations that Defendant knowingly furnished false or unverified reports concerning Mr. Stich's payment history, despite notice that its previous reports harmed Mr. Stich, constitute allegations of outrageous conduct.

Accordingly, the Court finds that Mr. Stich's outrageous conduct claim withstands a motion to dismiss; whether the claim will withstand a motion for summary judgment is another matter not presently before the Court.

## D.   DISPARAGEMENT CLAIM (CLAIM 4)

In support of the disparagement claim, Mr. Stich alleges that Defendant "made false statements to the consumer reporting agencies regarding the payment history of Mr. Stich's loan; the statements "were derogatory to Mr. Stich's business affairs"; Defendant "intended the false statements to cause harm to Mr. Stich's pecuniary interests or should have recognized that the false statements . . . would harm Mr. Stich's pecuniary interests"; Defendant's "false statements were made with malice because Mr. Stich had already notified the Defendant that it was making false statements to the [CRAs], but the Defendant continued to make such false statements"; and "Mr. Stich suffered special damages in regards to his lost lines of credit, lost business opportunities and damaged relationships with other creditors."  (Doc. # 1, ¶¶ 98-102).

Defendant seeks dismissal of the disparagement claim on grounds that the claim is "preempted by FCRA and falls within FCRA's qualified immunity provision."  (Doc. # 15 at 9).

The tort of disparagement consists of the following elements: (1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's title to his property or its quality, to his business in general or to some element of his personal affairs; (4) through which defendant intended to cause harm to the plaintiff's pecuniary interest or either recognized or should have recognized that it was likely to do so; (5) malice; and (6) special damages.  *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 507 (Colo. 2004).

In the instant case, Mr. Stich has alleged that Defendant furnished false statements to CRAs concerning his payment history, the false statements were derogatory to his business affairs, the Defendant furnished the false statements with malice, and Mr. Stich suffered special damages as a result.  Accordingly, the Court finds that Mr. Stich has stated an actionable claim for disparagement.  The Court will next consider whether the FCRA preempts the disparagement claim.

The FCRA contains two preemption provisions, both of which Defendant asserts applies to the disparagement claim.  First, as stated in 15 U.S.C. § 1681t(b)(1)(F), no state law may impose any requirement or prohibition with respect to any subject matter regulated under "section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"  Second, pursuant to 15

19

U.S.C. § 1681h(e), and except as provided in § 1681n, which concerns willful noncompliance, and § 1681o, which concerns negligent noncompliance, "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any . . . person who furnishes information to a consumer reporting agency . . . **except** as to false information furnished **with malice or willful intent** to injure such consumer."  15 U.S.C. § 1681h(e) (emphasis added).  By its very language, § 1681h(e) explicitly applies to state common law claims.

As recognized and comprehensively discussed by one of our sister courts, district courts have taken three different approaches to decide which of these seemingly contradictory provisions apply to a given state law claim.  *See Greene v. Capital One Bank*, No. 2:07-cv-687, 2008 WL 1858882, at *5-6 (D. Utah Apr. 23, 2008) (unpublished).  The three different approaches are as follows: (1) the "total preemption" approach, in which § 1681t(b)(1)(F) controls and preempts all state law causes of action, including common law claims; (2) the "temporal" approach, in which courts look to whether the claim arose before or after the furnisher of information received notice of the false information, and apply the preemption provision in § 1681t(b)(1)(F) as soon as the furnisher of information has notice of the consumer dispute;[11] and (3) the "statutory"

---

[11]    In support of its Motion to Dismiss, Defendant cited to three District of Kansas decisions in which the court applied the temporal approach.  (*See* Doc. # 19 at 6) (citing *Wenner v. Bank of Am.*, 637 F. Supp. 2d 944, 953 (D. Kan. 2009); *Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314, 1331 (D. Kan. 2009); *Holland v. GMAC Mortgage Corp.*, No. 03-2666, 2006 WL 1133224, at *11-12 (D. Kan. Apr. 26, 2006) (unpublished)).

approach, in which courts apply § 1681t(b)(1)(F) to statutory claims and § 1681h(e) to state common law claims in the nature of defamation, invasion of privacy, or negligence.  *Id.* (adopting the statutory approach because if best harmonizes the competing statutory provisions).

About one year after the District of Utah issued the *Greene* decision, the Tenth Circuit had an opportunity to assert its authoritative voice and give the district courts direction on the issue of FCRA preemption, but it did not.  *See Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (2009) (unpublished).  In one sentence, the court addressed the issue of preemption and summarily stated, without any analysis or reasoning, "And since the [plaintiff's] state-law claims were preempted by the FCRA, *see* 15 U.S.C. § 1681t(b)(1)(F), the district court was correct to grant [the defendant's] motion to dismiss."  *Id.*  Such a summary conclusion, as articulated in an unpublished case, is neither persuasive nor controlling precedent.  Accordingly, this Court does not consider itself bound to the Tenth Circuit's cursory application of the "total preemption" approach.

Like the District of Utah, this Court finds that the total preemption approach is too restrictive and gives broad power to § 1681t, which then renders § 1681h(e) meaningless; the statutory approach is more balanced.  *See also Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1070 (D. Colo. 2009) (J. Krieger) (finding that the total preemption approach gives § 1681t "a broader reach than is necessary or appropriate").  Though the Court finds that the statutory approach is more persuasive,

the Court need not explicitly adopt the statutory approach over the temporal approach at this juncture.  At this motion to dismiss stage, the Court need only determine whether § 1681t preempts Mr. Stich's disparagement claim.  The Court finds that it does not.  The Court also finds that § 1681h(e) does not preempt Mr. Stich's disparagement claim, which claim is premised on allegations that Defendant furnished false statements "with malice" and thus falls under the § 1681h(e) exclusionary provision.[12]

Accordingly, having found that Mr. Stich has stated an actionable disparagement claim and that such claim is not preempted by the FCRA, the Court finds that denial of Defendant's Motion to Dismiss with respect to this claim is warranted.

**E.     CLAIM FOR PRELIMINARY INJUNCTIVE RELIEF (CLAIM 5)**

In the fifth claim for relief, Mr. Stich seeks a preliminary injunction and asserts he is "entitled" to such relief and that "[u]nless the Defendant is enjoined from making further false reports to the consumer credit reporting agencies, [he] will continue to suffer immediate and irreparable harm."  (Doc. # 1 at 16.)

The Court finds that dismissal of the injunctive relief claim is warranted.  Notably, "[u]nder the FCRA, only the Federal Trade Commission can seek injunctive relief from a . . . reporter of credit information.  Individual customers are limited to the remedies provided under the FCRA, *i.e.*, damages and attorney fees."  *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1353-55 (D. Kan. 2006) (finding that the FCRA preempted the

---

[12]   "[N]o consumer may bring any action or proceeding in the nature of defamation . . . except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).

injunctive relief claim) (citing *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000)); *see also* 15 U.S.C. § 1681s(a)(3).[13]  To the extent that Mr. Stich seeks injunctive relief under state common law, such claim for relief fails because the "FCRA preempts state laws to the extent that they are inconsistent with the federal statute."  *Id.* (citing 15 U.S.C. § 1681t(a)).

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED THAT:

(1)    Defendant's Motion to Dismiss (Doc. # 15) is GRANTED IN PART and DENIED IN PART;

(2)    Plaintiff Icon Home Health, LLC is DISMISSED from this action;

(3)    The FCRA claims (Claims 1 and 2) are DISMISSED, in part, to the extent that they concern Defendant's reports about the timeliness of Mr. Stich's September-December 2009 payments and to the extent they are premised on business-related damages; and

(4)    The claim for preliminary injunctive relief (Claim 5) is DISMISSED.

DATED:  March    28   , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[13]   "[A] court may not impose any civil penalty on a person for a violation of section 1681s-2(a)(1) of this title unless the person has been enjoined from committing the violation, or ordered not to commit the violation, in an action or proceeding brought by or on behalf of the Federal Trade Commission, and has violated the injunction or order[.]" 15 U.S.C. § 1681s(a)(3).