**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 10-cv-01106-CMA-MEH

THOMAS STICH,

     Plaintiff,

v.

BAC HOME LOANS SERVICING, LP,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

     This matter is before the Court on the Motion for Summary Judgment of Defendant, BAC Home Loans Servicing, LP ("BAC").  (Doc. # 56.)  Plaintiff, Thomas Stich ("Stich"), alleges that BAC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., committed outrageous conduct, and disparaged him by providing credit reporting agencies ("CRAs") erroneous information regarding payments he made on a BAC loan.  Jurisdiction is proper under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state-law claims). For the reasons discussed below, the Court grants BAC's motion.

## I. <u>BACKGROUND</u>[1]

Stich obtained a loan on or about November 21, 2003, to purchase an investment property.  (Doc. # 84 at 7.)  Stich executed a deed of trust on the property, which was later acquired by BAC.  (*Id.* at 8.)  In August 2009, BAC approved Stich for a loan modification that he had previously requested.  (*Id.*)  However, Stich found the terms of the modification unfavorable and declined it.  (*Id.*)  As a result of internal error, BAC misapplied Stich's September and October 2009 mortgage payments and also reported to various CRAs that his mortgage payments were late each month from September through December, 2009.  (*Id.*)

On December 16, 2009, BAC sent Stich a letter indicating that he had made his September and October 2009 payments but that they had not been applied to his loan.  (*Id.*)  On January 26, 2010, BAC sent Stich another letter that reads, in pertinent part:

> Thank you for your recent contact regarding your request for a Credit Reporting adjustment.
>
> We are pleased to inform you that this request has been completed.
>
> We have received your request for a credit report adjustment related to your 09/2009, 10/2009, 11/2009, 12/2009, mortgage installment . . . .  The corrected information was submitted on 01/26/2010 to the credit reporting agencies.
>
> [. . .]
>
> Please be advised that it takes an average of 60 days for the credit reporting agencies to complete the submitted credit report adjustment. If your credit remains unchanged after 60 days, please contact the credit reporting agencies for an explanation.

(Doc. # 1-13; *see id.*)

---

[1] The following facts are undisputed.

Stich paid his January 2010 loan payment on January 16, 2010.  (Doc. # 84 at 8.)

Stich's February 17, 2010 statement shows that his January 2010 payment was applied

to his loan.  (*Id.*)  Nonetheless, BAC reported Stich's January payment as 30 days late

to the CRAs.  (*Id.*)  However, Stich's February 4, 2010 credit report does not indicate a

late payment for January 2010.  (*See* Doc. # 1-3 at 2.)  Instead, it shows "Late Dates"

for only 12/09, 11/09, 10/09, and 9/09.  (*Id.*)

On March 12, 2010, Stich, through counsel, sent a letter to the CRAs.  (Doc.

# 1-17.)  The letter requests "re-investigation" of "incomplete and inaccurate information

that is now contained within [Stich's] credit reports . . . ."  (*Id.* at 2.)  It relates Stich's

decision to decline the loan modification BAC had approved and asserts that, although

he had "continued making his regular loan payments[,]" BAC reported him to the CRAs

"as delinquent on the loan."  (*Id.* at 2-3.)  The letter then says that Stich contacted BAC

regarding "the erroneous delinquency reporting to the [CRAs]."  (*Id.* at 3.)  It continues:

> On January 26, 2010, [BAC] wrote Mr. Stich to inform him that his credit
> reporting adjustment request had been completed.  A copy of the January
> 26, 2010 letter from [BAC] is enclosed herewith.  [. . .]  Mr. Stich hereby
> demands, pursuant to 15 U.S.C. § 1681i, that you conduct an immediate
> investigation of the delinquencies reported by [BAC].

(*Id.* (emphasis and capitalization deleted).)

On March 24, 2010, one of the CRAs, Innovis Consumer Disputes ("Innovis"),

responded to Stich's letter.  (Doc. # 1-16.)  Regarding Stich's BAC loan, the response

states: "[t]he source that furnished this data to us verified that the information in our files

is correct."  (*Id.* at 5.)  That data is highlighted at the bottom of the same page and says,

in pertinent part, "[i]nformation last received from source 03/10" and "30 days past due

03/10, 01/10, 03/07." (*Id.*)  The data does not list the payments on 12/09, 11/09, 10/09, or 9/09, which were the subject of BAC's January 26, 2010 letter to Stich.  (*See id.*)  The "Dispute Summary" of the letter advises, "If you disagree with the results of our findings, you may add a brief statement to your file.  You may also contact the company that furnished the information to us." (*Id.*)

On May 12, 2010, Stich and Icon Home Health, LLC ("Icon"), a company for which Stich is a 50% member and Chief Financial Officer, filed a Complaint asserting the following five claims against BAC: (1) willful violation of the FCRA, 15 U.S.C. § 1681s(b); (2) negligent violation of the FCRA, 15 U.S.C. § 1681s(b); (3) outrageous conduct; (4) disparagement; and (5) preliminary injunctive relief.  (Doc. # 1.) In response, on July 26, 2010, BAC filed a Motion to Dismiss.  (Doc. # 15.)  On March 29, 2011, the Court granted in part and denied in part BAC's motion.  (Doc. # 33.) As relevant here, the Court: construed and analyzed Stich's first two claims under 15 U.S.C. § 1681s-2(b), as opposed to § 1681s(b)[2]; dismissed Icon from this action; dismissed in part Stich's FCRA claims to the extent they concerned BAC's reports about the timeliness of Stich's September-December 2009 mortgage payments; and dismissed Stich's claim for preliminary injunctive relief.  (*See id.*)

The Court's March 29, 2011 Order reduced Stich's claims to those for: (1) willful and negligent violation of the FCRA relating to inaccuracies in his payment history that arose after December 2009; (2) outrageous conduct; and (3) disparagement.  (*See* Doc. # 84 at 2.)  As to these remaining claims, BAC filed a Motion for Summary Judgment on

---

[2] The Court does likewise here, and for the same reasons as expressed in the March 29, 2011 Order.  (*See* Doc. # 33 at 10 n.8.)

August 12, 2011.  (Doc. # 56.)  Stich responded on September 13, 2011 (Doc. # 63),

and BAC replied on September 30, 2011 (Doc. # 66).

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A factual dispute is "genuine" if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Allen v. Muskogee*, 119 F.3d 837, 841

(10th Cir. 1997).  A fact is "material" if, under the pertinent substantive law, it is essential

to the proper disposition of the claim.  *See, e.g.*, *Wright v. Abbott Labs, Inc.*, 259 F.3d

1226, 1231-32 (10th Cir. 2001).  When reviewing a summary judgment motion, the

Court views the record, and draws all reasonable inferences therefrom, "in the light

most favorable to the party opposing summary judgment."  *Lewis v. Circuit City Stores,*

*Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007).

Where, as here, the movant does not bear the ultimate burden of persuasion at

trial, "it may satisfy its burden at the summary judgment stage by identifying 'a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim.'"

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting

*Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998)).  If the movant meets

its burden, the non-movant may not rest on its pleadings; instead, it must "designate

specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 325-26 (1986) (internal quotation marks omitted).

## III.  ANALYSIS

The Court will address, in turn, Stich's FCRA, outrageous conduct, and disparagement claims.

### A.  FCRA CLAIMS

BAC first asserts that it is entitled to summary judgment on Stich's FCRA claims. For the reasons discussed below, the Court agrees.

The FCRA is "intended to protect consumers against the compilation and dissemination of inaccurate credit information." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (emphasis deleted).  One way it does so is by requiring a furnisher of credit information (in this case, BAC) to investigate items of such information when disputed by a consumer.  *See* 15 U.S.C. § 1681s-2(b)(1).  The furnisher's duty to investigate is triggered when it "receiv[es] notice pursuant to section 1681i(a)(2) of . . . a dispute with regard to the completeness or accuracy of any information [it] provided . . . to a consumer reporting agency . . . ." *Id.*  Section 1681i(a)(2) provides, in pertinent part, that a CRA "shall provide notification of [a consumer's] dispute to any person who provided any item of information in dispute . . . .  The notice shall include all relevant information regarding the dispute that the [CRA] has received from the consumer . . . ."  In other words, to obligate a furnisher to investigate credit information, the consumer must first dispute such information with a CRA.  *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 Fed. Appx. 744, 751 (10th Cir. 2009) (unpublished) ("the duties listed in § 1681s-2(b) arise only after the furnisher receives notice of a dispute from a CRA; notice of a dispute received directly from the

consumer does not trigger furnishers' duties under subsection (b)" (internal quotation marks, citations, and emphasis deleted)).

In the instant case, the parties agree that Stich needed to dispute his credit information to a CRA before BAC could have had a duty to investigate it.  (*See* Doc. ## 56 at 6, 63 at 5-6.)  They disagree, however, as to whether such a dispute occurred. (*Id.*)  BAC argues that Stich did not dispute "either the January or March 2010 payment inaccuracies."  (Doc. # 56 at 6.)  It asserts that: Stich's March 12, 2010 letter was the only dispute he sent to the CRAs; the letter referenced, by incorporating BAC's January 26, 2010 letter, the September-December 2009 inaccuracies but not the alleged January or March 2010 errors; and Stich has provided no evidence indicating that he knew of the latter errors before receiving the March 24, 2010 response from Innovis. (*Id.* at 7.)  Stich asserts that his March 12, 2010 letter "disputed [BAC's] on-going practice of making erroneous reports of delinquency . . . ."  (Doc. # 63 at 6.)  He also argues that because he and BAC "have differing positions on the effect of [the] March 12, 2010 letter," whether he disputed the January and March 2010 inaccuracies "is a material fact very much in dispute."  (*Id.* at 7.)  The Court is not persuaded by Stich's position.

As an initial matter, despite Stich's argument to the contrary, no factual dispute exists as to the March 12, 2010 letter.  The letter, which the Court quoted at length above, speaks for itself.  Moreover, BAC acknowledges, without disputing, Stich's characterization of the letter as "disput[ing] [BAC's] on-going practice of making

erroneous reports of delinquency." (Doc. # 66 at 3 (quoting Doc. # 63 at 6).)[3]  But BAC

further argues, and the Court agrees that, in light of the particular facts of this case,

such "general statements about inaccurate accounts" did not suffice as a matter of law

to put BAC on notice of disputed information. (*Id.* at 2-3.)

Under § 1681s-2(b)(1), the information provided by a CRA to a furnisher is based

on the information "that the agency has received from the consumer." 15 U.S.C.

§ 1681i(a)(2)(A). Assuming, without deciding, that a consumer's general dispute about

inaccurate information in an account may, on some occasions, suffice to put a furnisher

on notice of dispute under § 1681s-2(b)(1), Stich's notice here was insufficient because,

instead of just raising a general complaint, it actually highlighted specific

information—the September-December 2009 errors—on which he no longer bases his

claim, without even mentioning the inaccuracies he now disputes. In the March 12,

2010 letter, Stich specifically referenced and, in fact, attached, the January 26, 2010

letter BAC had sent him, which mentions only the loan inaccuracies concerning the

September-December 2009 information. (Doc. # 1-17.) Accordingly, Stich's dispute

concerned inaccurate information in his account—but it also exclusively drew attention

to inaccuracies of which he no longer complains. Under such a circumstance, BAC

---

[3] The Court finds BAC's position on this issue to be generous, especially given Stich's
affirmation, during his deposition, that the March 12, 2010 letter "didn't dispute any late
reporting as to [the] January 2010 payment to BAC or [the] March 2010 payment to BAC."
(Doc. # 56-1 at 35.)

could not reasonably have been on notice as to any information that Stich failed to specifically indicate.[4]

Stich's citation to *Eller v. Experian Information Solutions, Inc.*, No. 09-cv-00040, 2011 WL 3365513 (D. Colo. Aug. 4, 2011) (unpublished), does not require a contrary conclusion.  In *Eller*, the plaintiff sent a dispute letter to a CRA about inaccurate information in his credit report and subsequently sued the CRA under § 1681i for failing to conduct a proper reinvestigation.  *Id.* at *5.  However, the account on which he premised his claim had not appeared on his credit report as of the date he disputed the inaccurate information with the CRA.  *Id.*  Accordingly, the *Eller* court granted the CRA's summary judgment motion on that claim, stating that "the statute requires notice of a specific item of information appearing falsely on a credit report," and noting that, therefore, "[plaintiff] needed to have provided [the CRA] notice *after* the [erroneous] account appeared in his file."  *Id.* (emphasis in original).  Stich asserts that, as opposed to the plaintiff in *Eller*, he "disputed an item of information, i.e.[,] the BAC account." (Doc. # 63 at 6.)  While true, that argument ignores the fact that, as previously discussed, he also specifically referenced the September-December 2009 inaccuracies but did not similarly mention the January or March 2010 errors.[5]

---

[4] This conclusion finds further support in Stich's affirmation, mentioned previously at n.3, that the March 12, 2010 letter "didn't dispute any late reporting as to [the] January 2010 payment to BAC or [the] March 2010 payment to BAC."  (Doc. # 56-1 at 35.)

[5] The Court notes that the level of specificity with which a consumer must dispute his credit information may differ as between CRAs and furnishers of information.  Although a decision on that issue is not called for here, the Court observes that the level of specificity apparently

Further, Stich's apparent unawareness of the January and March 2010 errors belies his argument.  Section 1681s-2(b)(1) is triggered only by a consumer giving "notice of a dispute" to a CRA which, in turn, "provide[s] notification of the dispute" to the furnisher of the information.  15 U.S.C. § 1681i(a)(2)(A).  As a logical matter, the consumer cannot dispute information about which he is unaware.  Here, BAC has met its summary-judgment burden by identifying a lack of evidence demonstrating that Stich knew of the January or March 2010 inaccuracies when he sent the March 12, 2010 dispute letter.  As such, Stich was required—but has failed—to designate specific facts showing that he was aware of the January or March 2010 errors before sending the March 12, 2010 letter.  Instead, he merely "denies he learned that the January 2010 payment was reported as late after receiving the results of the investigation" (Doc. # 63 at 3) and points to a December 2010 credit report, which shows "[a]ccount information disputed by consumer" for a 01/10 payment in Stich's BAC account (Doc. # 63-1 at 9).  Stich's unsworn statement, by itself, is insufficient.  *See, e.g.*, *Cossio v. City & Cnty. of Denver*, 986 F. Supp. 1340, 1348 (D. Colo. 1997) ("In order to avoid summary judgment, a plaintiff must offer more than mere assertions, legal conclusions or arguments, and must demonstrate by relevant and specific facts that a real controversy exists.").  Further, the credit report is unavailing; Stich does not explain, nor is it obvious to the Court, how a December 2010 document helps to demonstrate what Stich knew at

---

contemplated by the *Eller* court—*i.e.*, the specific account at issue—might be sufficient to put a CRA on notice under § 1681i(a)(1)(A) but simultaneously insufficient for a furnisher of information under § 1681s-2.  Such a difference could exist due to a furnisher having to address significantly more material than a CRA when a consumer disputes his credit information.

the time he disputed his credit information—*i.e.*, nine months earlier in March 2010.

To be sure, the report indicates a dispute, but its origin is neither disclosed on the

document nor elucidated by Stich.[6]  Thus, because Stich has not provided any evidence

that he knew about the January or March 2010 inaccuracies before disputing his credit

information to the CRAs, his dispute logically could not have included such

inaccuracies.

 Accordingly, BAC did not violate the FCRA, § 1681s-2(b), willfully, negligently, or

in any other manner.  As such, the Court needs not address BAC's argument that Stich

has failed to show any actual damages caused by the January or March 2010

inaccuracies.

**B.   OUTRAGEOUS CONDUCT CLAIM**

 BAC next asserts that it is entitled to summary judgment on Stich's outrageous

conduct claim.[7]  The Court agrees.

 Since *Rugg v. McCarty*, 476 P.2d 753 (Colo. 1970), Colorado law has recognized

the tort of outrageous conduct, which is also sometimes called "intentional infliction of

emotional distress."  The elements of liability for this tort are that: (1) the defendant

engaged in extreme and outrageous conduct; (2) the defendant behaved recklessly or

---

[6] The dispute may have shown up on the credit report as a result of the Court's June 16, 2010 "Order Regarding Motion for Stipulated Order re Motion for Preliminary Injunction," which directed BAC to "report to the [CRAs] that Mr. Stich's loan is involved in a credit dispute." (Doc. # 10.)

[7] In its Reply, BAC also argues that Stich "abandoned" this claim.  (Doc. # 66 at 10.)  Indeed, Stich failed to analyze the outrageous conduct claim in his Response.  (*See* Doc. # 63.) However, the Court declines to address the repercussions of Stich's inaction because the claim fails on the merits.

with the intent to cause severe emotional distress to the plaintiff; and (3) the plaintiff suffered severe emotional distress that was caused by the defendant's conduct. *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).  "Outrageous conduct" is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988).  Although the jury usually determines as a matter of fact whether the conduct at issue was outrageous, "it is first the responsibility of a court to determine whether reasonable persons could differ on the question."  *Culpepper*, 877 P.2d at 883.

A brief comparison of BAC's conduct and conduct that has been regarded as outrageous in other cases shows that reasonable persons could not differ in deciding that BAC's conduct fell short of being outrageous.  Colorado courts have identified such conduct in:

- *Rugg*, 476 P.2d 753, when a creditor engaged in a continuous campaign of harassment by calling its debtor several times, sending her numerous letters demanding payment of her debt, and informing her employer of the debt by asking how many garnishments the employer would allow from the debtor's salary.

- *Pearson v. Kancilia*, 70 P.3d 594 (Colo. App. 2003), when a male chiropractor threatened to stop treating a patient if she did not continue to have sex with him and to fire an employee if she did not also continue to have sex with him.

12

- *Bohrer v. DeHart*, 943 P.2d 1220 (Colo. App. 1996), *rev'd on other grounds*, 961 P.2d 472 (Colo. 1998), where an adult youth minister convinced a twelve-year-old parishioner to go to him for counseling sessions, to "confide[] in him about her abusive father, her distant mother, and her thoughts of suicide," and then to become sexually active with him.

- *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292 (Colo. App. 1982), in which, despite knowing that the plaintiff "was peculiarly susceptible to emotional distress because she had witnessed her husband's suicide," the defendant car salesmen: demanded she return to the dealership when they realized a car had been sold to her for a loss; took the car back from her against her will; and followed her through the dealership, shouting, using abusive language, and physically threatening her.

- *Meiter v. Cavanaugh*, 580 P.2d 399 (Colo. App. 1978), where the defendant refused to vacate his property when he promised to, verbally harassed and insulted the elderly woman with whom he had negotiated and, as an attorney, threatened legal action against her in a letter which (falsely) implied that he "had some special influence with the court."

This non-exhaustive list of cases illustrates that the "tort of outrageous conduct was designed to create liability for a very narrow type of conduct," *Green v. Qwest Services Corp.*, 155 P.3d 383, 385 (Colo. App. 2006), and that the "level of outrageousness required to create liability is extremely high," *Pearson*, 70 P.3d at 597.

13

By comparison, BAC's conduct cannot reasonably be deemed to have met this "extremely high" threshold.  At best, Stich has shown that BAC engaged in a pattern of reporting his timely payments as delinquent.   Although such conduct is certainly unprofessional, and perhaps even negligent, it does not "go beyond all possible bounds of decency" or rise to the level of being "atrocious . . . and utterly intolerable in a civilized community."  *Destefano*, 763 P.2d at 286; *see Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210 (D. Colo. 2011) (concluding that the conduct of a furnisher of information, who delayed in investigating a consumer's complaints, "at most amounts to negligence, and therefore does not rise to the level of extreme and outrageous conduct").  As opposed to the defendants in *Bohrer* and *Zalnis*, BAC did not act with knowledge that Stich was particularly susceptible to emotional distress.  Nor did BAC abuse a position of authority it held over Stich, unlike the defendants in *Pearson* and *Meiter*.  The closest BAC's conduct comes to appearing outrageous is in its vague resemblance of the defendant's behavior in *Rugg* which, at the greatest level of abstraction, consisted of a series of inappropriate incidents.  But unlike in *Rugg*, BAC's conduct here also included corrective measures to address Stich's complaints.  (*See* Doc. # 33 at 13-14 ("[T]o the extent that Mr. Stich's March 12, 2010 letter to the CRAs referenced Defendant's reports concerning the untimeliness of Mr. Stich's September-December . . . payments, those reports had already been corrected by Defendant and such corrections appeared in Mr. Stich's credit report by the time Innovis . . . completed its investigation.").)

14

Accordingly, BAC is entitled to summary judgment on Stich's outrageous conduct claim.

## C.     DISPARAGEMENT CLAIM

Finally, BAC asserts, and the Court agrees, that summary judgment should enter on Stich's disparagement claim.[8]  Assuming, without deciding, that Stich's claim is not preempted by the FCRA, 15 U.S.C. §§ 1681h and 1681t, it nonetheless fails on the merits.

The tort of disparagement consists of the following elements:

(1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's title to his property or its quality, to his business in general or to some element of his personal affairs; (4) through which defendant intended to cause harm to the plaintiff's pecuniary interest or either recognized or should have recognized that it was likely to do so; (5) malice; and (6) special damages.

*Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 507 n.16 (Colo. 2004).

In the instant case, Stich alleged that BAC's "false statements were made with malice because Mr. Stich had already notified [BAC] that it was making false statements to the [CRAs], but [BAC] continued to make such false statements."  (Doc. # 1 at 15-16.) Stich appears to clarify this allegation in his Response, when he asserts that BAC committed willful non-compliance of the FCRA:

The fact that the Defendant reported Mr. Stich's January 2010 payment as late mere weeks after it had corrected the September through December 2009 erroneous reports demonstrates that the Defendant knew of the

---

[8] BAC again argues, as it did regarding the outrageous conduct claim, that Stich has "abandoned" his claim for disparagement.  (Doc. # 66 at 10.)  Although Stich also failed to analyze this claim in his Response (*see* Doc. # 63), the Court will again address the claim on the merits, and for the same reasons as stated above, at n.7.

> problem with the reporting on Mr. Stich's account, but nonetheless
> reported Mr. Stich's timely January 2010 payment as late.  The report
> that Mr. Stich's timely January 2010 payment was late was not mere
> negligence, but was a conscious, willful disregard of Mr. Stich's rights.

(*See* Doc. # 63 at 11.)  The Court is not persuaded by Stich's argument.

As a threshold matter, whatever differences there might be between willfully failing to comply with the FCRA and acting with the malice required for a disparagement claim need not be explored fully here.  For either claim, the least a plaintiff must show is that the defendant acted with "reckless disregard."  *See Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 57 (2007) (discussing "reckless disregard of statutory duty" in FCRA context); *Williams v. Burns*, 540 F. Supp. 1243, 1248 n.3 (D. Colo. 1982) (discussing "reckless disregard for the truth" in context of the "precise type of 'malice' required . . . for disparagement").  "Reckless disregard" generally means "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  *U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543, 549 (Colo. App. 2008) (citations omitted).  In the context of speech, "reckless disregard" means that "the speaker made [the statement] with a high degree of awareness of probable falsity or entertained serious doubts as to [its] truth . . . ."  *In re Green*, 11 P.3d 1078, 1083-84 (Colo. 2000) (internal quotation marks, citation, and lacuna omitted).

In the instant case, Stich has not provided sufficient evidence demonstrating that BAC acted with reckless disregard.  As indicated above, the closest Stich gets is arguing that BAC knew about the September-December 2009 inaccuracies when it

reported his January 2010 payment as late.  But this argument sheds little, if any, light on BAC's knowledge regarding the January 2010 payment, itself.  Drawing all reasonable inferences from the record in the light most favorable to Stich, the Court finds that, at most, BAC should have exercised greater caution when reporting the January 2010 payment as late, given the previous inaccuracies in Stich's account. However, BAC's failure to exercise such caution does not mean, and Stich has failed to provide any evidence to show, that BAC "entertained serious doubts" about the truth of its report or that it maintained a "high degree of awareness" that its report was probably false.  Moreover, as Stich admits, not only was BAC aware of the September-December 2009 inaccuracies before it reported the January 2010 payment as late, but it had already corrected them.  Thus, to the extent that the prior inaccuracies are at all relevant to BAC's conduct in reporting the January 2010 payment as late, BAC's willingness to acknowledge and correct its mistakes undercuts Stich's assertion that it acted with "reckless disregard."

Because Stich has not provided evidence showing that BAC acted with malice toward him, the Court needs not address the other elements of disparagement. As such, Stich's disparagement claim fails as a matter of law.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS that BAC's Motion for Summary Judgment (Doc. # 56) is GRANTED.  Accordingly, it is

17

FURTHER ORDERED that Stich's Motion to Compel (Doc. # 90) is DENIED AS MOOT.  It is

FURTHER ORDERED that the hearing on Stich's Motion to Compel, set for February 28, 2012, the Final Trial Preparation Conference, scheduled for March 16, 2012, and the five-day jury trial, scheduled to begin April 9, 2012, are VACATED.  It is

FURTHER ORDERED that BAC shall have its costs by filing a Bill of Costs with the Clerk of Court within ten days of the entry of judgment.  However, each party shall bear its own attorneys' fees.  It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

DATED:  February __27__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge